Jeffrey S. Lawson (SBN 99855)
jsl@svlg.com
Kathryn E. Barrett (SBN 162100)
keb@svlg.com
SILICON VALLEY LAW GROUP
50 W. San Fernando Street, Suite 750
San Jose, CA 95113
Phone: (408) 573-5700
Fax:     (408) 573-5701

Attorneys for Verse Two Properties, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| VERSE TWO PROPERTIES, LLC | Case No. 5:14-cv-03765 EJD |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.; AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| vs. | |
| HANGGI MANUFACTURING, INC., a Delaware corporation; MEDPLAST FREMONT, INC., a Delaware corporation, VERSATEC, INC, a California corporation; Xerox Corporation, a New York corporation and Does 1 – 50, inclusive. | Date:   May 5, 2016<br>Time:   9:00 a.m.<br>Place   280 S. 1st Street, Courtroom 4<br>           San Jose, CA 95113 |
| Defendants. | |
| MEDPLAST FREMONT, INC. a Delaware corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| JAMES PAYNE; MARY PAYNE; THE DRIVING MACHINE, INC., and ROES 1-10, inclusive, | |
| Third-Party Defendants. | |

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC

# **TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………………………………   1

II.  BACKGROUND……………………………………………………………….   3

III. PLAINTIFF HEREBY OBJECTS TO THE DECLARATION OF MATTHEW K. NARENSKY AND DEFENDANTS' REQUEST FOR JUDICIAL NOTICE……………   5

IV. LEGAL STANDARD…………………………………………………………...   7

V.  ARGUMENT…………………..……………………………………………...   8

      A.   Plaintiffs Have Adequately Pled Imminent and Substantial Endangerment Under 42 U.S.C. §6972(a)(1)(B)……………………………………………………   8

      B.  Defendants' Proffered New Evidence is Objectionable and Does not Obviate the Imminent and Substantial Endangerment at the Property…………………………   12

      C.  Plaintiff Allegations Sufficiently Meet the Requirements of the Discovery Rule to Toll the Statute of Limitations……………………………………………………   13

            1.   Plaintiff's Claims Fall Within The Statute of Limitations Under the Discovery Rule………………………………………………………...   13

            2.   Defendants' Unfounded Claims of Constructive Notice Are Contrary to the Third Amended Complaint and, at Best, Present Issues of Fact……….   17

      D.  Plaintiff is Allowed to Elect Between Continuing and Permanent Trespass and Nuisance………………………………………………………………………… .   20

VI. CONCLUSION……………………………………………………………………   21

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

i

10468311.DOC

1

## **TABLE OF AUTHORITIES**

2

3

**CASES**

4

*Ashcroft v Iqbal*

(2009) 556 U.S. 662 ..................................................................... 7, 8

*Barnett v. Centoni*

(1994) 31 F. 3d 813 ............................................................................ 7

*Bell Atl. Corp. v. Twombly*

(2007) 550 U.S. 544, 556 ................................................................... 7

*Braden v. Wal-Mart Stores, Inc.*

(2009) 588 F. 3d 585, 595 ................................................................. 7

*Camsi IV v Hunter Tech. Corp.*

(1991) 230 Cal App 3d 1525 ............................................................ 17

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*

(9th Cir. 2013) 710 F.3d 946 ............................................................ 16

*City of Chicago v. Environmental Defense Fund*

(1994) 114 S. Ct. 1588. ...................................................................... 9

*City of Fresno v. U.S.*

(E.D. Cal. 2010) 709 F.Supp.2d 934 .......................................... 10,11

*Coalition for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*

(E.D. Cal. 2011) 812 F. Supp. 2d 1089 ............................................. 6

*Cox v. City of Dallas*

(2001) 256 F.3d 281, 300–01 ........................................................... 10

*Dague v. City of Burlington*

(1991) 935 F.2d 1343, 1355–56 ....................................................... 10

*Gilligan v. Jamco Dev. Corp.*

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

ii

10468311.DOC

1     (1997) 108 F. 3d 246, 248 .................................................................................. 7

2     *Hal Roach Studios, Inc. v. Richard Feiner & Co.*

3        (9th Cir. 1990) 896 F.2d 1542 ..................................................................... 6

4     *Interfaith Community Organization v. Honeywell Intern., Inc.*

5        (2005) 399 F.3d 248, 258 ............................................................................ 9

6     *Leaf v. City of San Mateo*

7        (1980) 104 Cal. App. 3d 398 .................................................................... 14

8     *Leaves v. City of San Mateo*

9        (1989)104 Cal. App. 3d 398 ..................................................................... 19

10    *Lee v City of Los Angeles*

11       (9th Cir. 2001) 250 F. 3d 668 .................................................................. 6

12    *Love v. United States*

13       (9th Cir. 1988) 915 F. 2d 1242 ......................................................... 7, 19

14    *Mangini v. Aerojet-General Corp*

15       (1991) *230 Cal. App. 3d 1125* ............................................... 14, 16, 17, 18

16    *McCoy v. Gustafson*

17       (2009) 180 Cal.App.4[th] 56 .................................................................. 20

18    *McKeever v. Block*

19       (1991) 932 F. 2d 795, 798 ........................................................................ 7

20    *Meghrig v KFC Western, Inc.*

21       (1996) 516 U.S. 479 ............................................................................... 11

22    *Northern California River Watch v. Fluor Corporation,*

23       2014 WL 3385287 ................................................................................. 11

24    *Parker v. Scrap Metal Processors, Inc.*

25       (2004) 386 F.3d 993, 1014–15 ............................................................... 10

26    *Price v. U.S. Navy*

27    Case No. 5:14-CV-03765EJD

28
_____

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

iii

(9th Cir. 1994) 39 F.3d 1011 ................................................................... 10

*S.F. Herring Ass'n. v. Pac. Gas & Elec. Co.*

(N.D. Cal. 2015) 81 F. Supp. 3d 847 ....................................................... 11

*Saliter v. Pierce Brothers Mortuaries*

(1978) 81 Cal. App. 3d 292 ..................................................................... 14

*Sanchez v. South Hoover Hospital*

(1976) 18 Cal. 3d 93, 101 ........................................................................ 18

*United States v. Conservation Chemical Co.*,

(1985) 619 F.Supp. 162, 194 .................................................................... 10

*United States v. Dickinson*

(1947) 331 U.S. 745 ................................................................................. 20

*United States v. LSL Biotechnologies*

(9th Cir. 2004) 379 F.3d 672, 699 ............................................................. 6

*United States v. Union Corp.*

(2003) 259 F.Supp.2d 356, 399 ................................................................ 10

*West Coast Home Builders, Inc. v. Aventis Cropscience*

2009 WL 2612380 at 1 .............................................................................. 10

*Whittlestone Inc., v. Handi-Craft Co*

(2010) 618 F. 3d 970 .......................................................................... 20, 21

*Wilshire Westwood v Atl Richfield Co.*

(1993) 20 Cal App 4th 732 ................................................................. 18, 19

**STATUTES**

CERCLA ....................................................................................................... 15

Federal Rules of Civil Procedure

Rule 8 ............................................................................................................. 7

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

iv

10468311.DOC

Rule 8(d)(2) ................................................................................................................... 20

Rule 12(b)(6) ............................................................................................................... 7, 21

Rule 12(f) ...................................................................................................................... 21

Resource Conservation and Recovery Act 42 U.S.C. §6901 (RCRA).................................. 9

RCRA §6972(a)(1)(B)............................................................................................ 2, 8, 9, 11, 13

**OTHER AUTHORITIES**

3 Witkin, Cal. Proc. 5th (2008) Actions, § 601, p. 779 ...................................................... 20

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI
MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT
v

10468311.DOC

1    **I.   INTRODUCTION**

2         Mary and Jim Payne have operated their business at 10100 Bubb Road, Cupertino

3    ("Property") for 22 years.  They are the sole members of Plaintiff Verse Two Properties, LLC.  They

4    planned to retire and, as part of their retirement nest egg, they need to sell the Property.

5    Unfortunately, selling their Property has become virtually impossible because they recently

6    discovered that it is contaminated by hazardous substances that pervade the indoor air of the building

7    at dangerous levels.  The TCE-contaminated soil vapors that are permeating the building at toxic

8    levels are the result of Defendants', including Hanggi Manufacturing, Inc.'s and its successor

9    Medplast Fremont, Inc's  ("Hanggi" or "Defendants") mishandling of hazardous substances when

10   they owned and occupied the Property.

11        Because of the continuing danger to occupants at the Property, Santa Clara County

12   Department of Environmental Health ("DEH") has required that, until the remediation of the TCE-

13   contaminated toxic soil occurs, emergency interim measures must be employed to mitigate the harm

14   to the employees and tenants who occupy the building.  Specifically, all roll-up bay doors must be left

15   open and the HVAC system must be operating at all times when the building is occupied

16   ("Emergency Interim Measures").  Even now, despite Emergency Interim Measures taken by Plaintiff

17   to reduce the risk to occupants of the building, parts of the interior of the building have toxic air at

18   levels that endanger its occupants.  Regular air quality testing is required.  *There has been no*

19   *remediation of the TCE-contaminated soil* that is causing the toxic vapors to permeate the building.

20   Until remediation of the toxic soil, the occupants of the building must work in inclement (roll up

21   doors open during rain, wind, etc.), unsafe and unsecure conditions (roll-up doors open even if a

22   single person, such as Mary Payne, is working at night or weekends).  Defendants trivialize this state

23   of affairs claiming that these extraordinary measures are "remediation."

24        Plaintiff filed its action against Defendants on August 19, 2014.  [Docket 1].  Defendants'

25   Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") is a reprise of their prior motion to

26   dismiss Plaintiff's Second Amended Complaint ("SAC"). [Docket 83].  It is a waste of judicial

27   resources and needlessly increases the cost of litigation.

28   Case No. 5:14-CV-03765EJD

1    Specifically, Defendants again attack Plaintiff's claim under §6972(a)(1)(B) of the Resource

2  Conservation and Recovery Act of 1976 ("RCRA") *on exactly the same grounds as their failed*

3  *motion to dismiss this claim in Plaintiff's SAC*.  Defendants claim, without any factual basis and

4  contrary to the allegations in the TAC, that the court must find that there is no imminent and

5  substantial endangerment to health or the environment from the toxic soil vapors that continue to

6  permeate the building at the Property.  Defendants support this view with their factually erroneous

7  claim that remedial action is "currently being implemented at the Property."  Motion at pg. 6:23.  In

8  that regard, Defendants improperly proffer as new evidence by way of their Request for Judicial

9  Notice ("RFJN"), a document whose contents they mischaracterize.

10    Leaving aside Plaintiff's objection to Defendants' proposed RFJN, the document advanced by

11  Defendants is not what Defendants characterize it to be.  Because of the continuing danger posed by

12  the TCE-contaminated soil at the Property, the DEH, has continued to require that Plaintiff

13  implement Emergency Interim Measures (roll-up doors all to remain open, HVAC to be operated at

14  all times) *until remediation of the contaminated soil causing the ongoing toxic vapors can be*

15  *commenced*.  Defendants' request that the court adopt its characterization that the Emergency Interim

16  Measures constitute an agency-overseen remediation of the TCE-contamination, should be rejected.

17    Plaintiff has sufficiently plead that the Emergency Interim Measures, which are manifestly not

18  remediation of the TCE-contaminated soil that causes the continuing noxious vapors, are insufficient

19  to address the ongoing endangerment posed by the TCE-contaminated gasses.  These gasses continue

20  to permeate the indoor air at the Property at dangerous levels.  As the court ruled on Defendants'

21  motion to dismiss Plaintiff's SAC, the court should continue to find that Plaintiff has adequately pled

22  imminent and substantial endangerment and deny Defendants' motion as to Plaintiff's RCRA

23  §6972(a)(1)(B) claim.

24    Defendants also seek dismissal of Plaintiff's trespass, nuisance and negligence claims on

25  statute of limitations grounds.  Defendants claim that the facts pled by Plaintiff are insufficient, at this

26  pleading stage, to allege that it discovered the trespass, nuisance and negligence within three years of

27  filing its complaint.

Case No. 5:14-CV-03765EJD

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                                                          2

1    The TAC alleges (1) in 1992 Plaintiff's principal, James Payne, conducted Phase I and Phase

2  II environmental investigations using reputable environmental engineering companies prior to his

3  purchase of the Property [TAC ¶16]; (2) the Property "passed" these Phase I and Phase II inspections

4  [TAC ¶ 18]; (3) Plaintiff did not learn of contamination above any level of concern until 2012, when

5  Apple, a potential lessee, engaged in rigorous environmental investigations including soil gas testing,

6  which disclosed that TCE-contaminated soil vapors were permeating the building at toxic levels

7  [TAC ¶¶ 19]; (4) the contamination is from TCE-contaminated soil at the Property which creates

8  vapor which permeates the building and causes health risks to occupants at the Property  [TAC¶¶18,

9  22]; (5) Plaintiff was unable to make an earlier discovery of the contamination because the toxic

10  vapors from the TCE in the soil are beneath the pavement, are invisible to the eye, have no smell and,

11  having had the Property previously cleared by environmental inspections at the time of purchase in

12  1992, Plaintiffs had no reason to suspect these invisible contaminants until their potential new tenant

13  began its exhaustive due diligence using new and different techniques.  [TAC ¶¶18, 19].

14    Plaintiff's TAC pleads specific facts that show the time and manner of Plaintiff's discovery of

15  the contamination.  Plaintiff's TAC pleads sufficient facts demonstrating Plaintiff's inability to have

16  reasonably discovered it earlier, because Plaintiff had the Property "cleared" by prior Phase I and

17  Phase II environmental investigations at the time of purchase.  Thereafter Plaintiff had no evidence of

18  or reason to investigate environmental contamination until it was discovered by Apple in 2012.

19    Defendants' Motion, without authority, appears to require that the court employ a new legal

20  standard: obliging a property owner to engage in ongoing environmental testing of a property after

21  purchase even where there has been no prior notice of or suspicion of environmental issues.

22  Defendants' Motion also asks the court to analyze and make factual findings and rule in favor of

23  Defendants' unsupported, conclusory claim that the 1991 and 1992 Phase I and Phase II

24  investigations of the Property "must have" been insufficient.  These are factual issues and

25  Defendant's Motion should be denied.

26  **II. BACKGROUND**

27

28  Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI
MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT

10468311.DOC                                     3

1    In 1992 James Payne purchased the Property from Meinrad and Betty Hanggi. TAC ¶¶ 12, 13.

2    Prior to Payne's purchase of the Property, Defendants Hanggi and Versatec, Inc. operated at the

3    Property.  TAC ¶¶ 13, 14.  Hanggi operated a plastics manufacturing business at the Property

4    between 1976 and 1990.  Versatec manufactured printers and printed circuit boards at the Property.

5    TAC ¶¶ 14, 15.  Plaintiff is informed and believes that the Hanggi and Versatec manufacturing

6    processes used TCE and Freon-113.  TAC ¶13, 14, 15.

7    Prior to Payne's purchase of the Property, Phase I and II investigations were performed at the

8    Property by two separate environmental engineering firms.  The pre-purchase environmental

9    investigations "passed" the Property as they did not detect contamination at levels of concern, nor at

10   actionable levels, nor any contamination believed to be related to a release at the Property. TAC ¶¶16,

11   18.  In 2011 Payne transferred title to the Property to Plaintiff, a limited liability company of which

12   he and his wife are the sole members.  TAC ¶16.

13   In 2012 Verse II sought to lease the Property. TAC ¶19; In connection with the lease

14   transaction in 2012, experts were engaged by the potential lessee (Apple, Inc.) to investigate the

15   Property, using new and different techniques including investigation of indoor air toxins. TAC¶ 19.

16   On April 6, 2012 the Apple environmental investigation disclosed to Plaintiff that toxic vapors were

17   permeating the building. TAC ¶19.

18   Upon learning of the contamination from Apple, Plaintiff retained an environmental

19   engineering company, Arcadis U.S., Inc. to further investigate the contamination at the Property.

20   TAC ¶19.  TCE and Freon 113 were discovered in the soil, soil gas, indoor air and groundwater at the

21   Property. TAC¶ 27.  Plaintiff reported the contamination to the Santa Clara County Department of

22   Environmental Health ("DEH"). TAC ¶6.  Due to the risk of exposure to toxic gasses, Plaintiff

23   developed, under DEH oversight, an Occupancy Plan that had to be complied with any time the

24   building was occupied. TAC ¶43.

25   Because of the high exposure risk to occupants of the building, the DEH required that Plaintiff

26   submit an Occupancy Plan that included the Emergency Interim Measures. The Plaintiff later

27   submitted a formal interim plan (the Interim Remedial Acton Plan ("IRAP") advanced by

28

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI
MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT

10468311.DOC                                                    4

Defendants) that includes the exact same Emergency Interim Measures as the Occupancy Plan. (See IRAP p. 13-14 & 16.  The Emergency Interim Measures, also described as Engineering Controls, require that, any time the building at the Property is occupied the large roll-up doors must all be rolled up.  Additionally the HVAC system must be operating 100% of the time that the building is occupied. TAC¶ 43.  These Emergency Interim Measures (open doors and ventilation of the building) are insufficient to address the endangerment at the Property. TAC ¶45.  The levels of contamination from Defendants' operations at the Property continue to invisibly permeate the floor and infect the indoor air of the Property. TAC ¶27.  The contamination remains at the Property and continues to emanate and spread through the air constituting continuing releases now and into the future. TAC ¶44.  Expensive remediation of the contaminated soil will be required to permanently protect occupants of the Property from the toxic vapors. TAC ¶27.

Plaintiff continues to employ the Emergency Interim Measures to mitigate, to the extent possible, the dangerous toxic vapors.  Plaintiff continues to measure the vapor levels and groundwater contamination at the Property. TAC ¶¶27, 30.

Plaintiff has attempted to and has been unable to sell the Property because of the documented environmental contamination of the groundwater, the soil, the soil gas, and the indoor air. TAC¶32.

### III.  PLAINTIFF HEREBY OBJECTS TO THE DECLARATION OF MATTHEW K. NARENSKY AND DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants submit the Declaration of Matthew L. Narensky, along with exhibits that they seek to introduce as evidence in support of their Motion.  Defendants' Motion states:

> The key fact that Plaintiff fails to address in the TAC is that on August 20, 2015 DEH approved of an IRAP to be implemented at the property.  See Defendants' Request for Judicial Notice ("RJN") and Declaration of Matthew K. Narensky.

Plaintiff objects to Mr. Narensky's declaration as hearsay and lacking foundation.  Plaintiff's objections to these documents should be sustained.

Furthermore, Plaintiff objects to the RFJN submitted by Defendants.  The RFJN asks the court to adopt Defendants' self-serving interpretation of the substance of these documents (letters,

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC

5

1  environmental consultant proposal for interim occupancy plan).  The new evidentiary materials

2  proffered by Defendants are improper for consideration in a motion to dismiss.  As the court's prior

3  order stated when it declined to take judicial notice of documents submitted by way of a RFJN in

4  support of Defendants' motion to dismiss Plaintiff's SAC, the documents are outside the pleadings.

5  [Docket 102, fn. 2].  *Lee v City of Los Angeles* (9th Cir. 2001) 250 F. 3d 668, 688. *United States v.*

6  *LSL Biotechnologies* (9th Cir. 2004) 379 F.3d 672, 699-700. *Hal Roach Studios, Inc. v. Richard*

7  *Feiner & Co*. (9th Cir. 1990) 896 F.2d 1542, 1550.  Moreover, these new materials present factual

8  disputes as to their interpretation.  While publicly filed documents may be proper subjects for a

9  request for judicial notice, factual information asserted in such letters and reports "cannot be used to

10  create or resolve disputed issues of material fact." *Coalition for a Sustainable Delta v. Fed.*

11  *Emergency Mgmt. Agency* (E.D. Cal. 2011) 812 F. Supp. 2d 1089, 1093.

12  Here Defendants' proffered new evidence is comprised of expert evaluations of the soil gasses

13  and groundwater contamination at the Property.  It is attached to Mr. Narensky's Declaration and to

14  the RFJN without any expert witness to place the data and information into context.  A motion to

15  dismiss should be decided on the pleadings and not wrapped into a procedurally unsound equivalent

16  to a summary judgment, without the knowledgeable expert witnesses sponsoring their own

17  documentation.

18  Moreover, in this instance, the danger of the unsponsored document submitted via RFJN is

19  heightened where Defendants utterly mischaracterize their documents, implying that they

20  demonstrate that a cleanup of the Property is in progress ("a remedial action to be implemented at the

21  Property").  RFJN pg. 1:20.  But a reading of the IRAP reveals it simply formalized the Occupancy

22  Plan by declaring the Interim Emergency Measures to be Engineering Controls sufficient to protect

23  building occupants until a Remedial Action (cleanup) takes place.  IRAP p. 13-14 & 16.  Defendants'

24  interpretation of the documents is inaccurate.  As more fully set forth above, only Emergency Interim

25  Measures are in place, including the requirements for ongoing testing for toxic levels, keeping all

26  doors open and HVAC in operations, *pending remediation* of the TCE-contaminated soil that is

27

28  Case No. 5:14-CV-03765EJD

1  causing the toxic fumes in the building.  ¶27.  There is no remediation plan presented, approved or

2  commenced to address the TCE-contaminated soil.

3      All that the documents attached to the Defendants' declaration show is that: (1) Defendants

4  have sufficient notice of the claim, and (2) resolution of technical environmental issues raised in the

5  environmental reports requires expert testimony.  Advocating to the court to try and interpret them

6  now is inviting error.  Defendants' request that the court review the Defendants' new evidence and

7  adopt their conclusion that open doors and blowing HVAC is sufficient to negate the imminent and

8  ongoing endangerment posed by the TCE-contaminated soil gasses, should be rejected.

9  **IV. LEGAL STANDARD**

10     Federal Rule of Civil Procedure, Rule 8 requires only a short and plain statement of the claim

11  showing the plaintiff is entitled to relief.  *Gilligan v. Jamco Dev. Corp*. (9th Cir. 1997) 108 F. 3d 246,

12  248.  "All that is required are sufficient allegations to put defendants fairly on notice of the claims

13  against them." *McKeever v. Block* (9th Cir. 1991) 932 F. 2d 795, 798.  A court may not dismiss a

14  complaint for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to

15  prove any set of facts to support its claim.  *Barnett v. Centoni* (9th Cir. 1994) 31 F. 3d 813.

16     A court must construe the complaint in the light most favorable to plaintiff, accept as true all

17  of the factual allegations set out in the complaint, draw inferences from those allegations in the light

18  most favorable to plaintiff and construe the complaint liberally.  *Love v. United States* (9th Cir. 1988)

19  915 F. 2d 1242, 1245.  All reasonable inferences from the facts alleged are drawn in plaintiff's favor

20  in determining whether the complaint states a valid claim.  *Braden v. Wal-Mart Stores, Inc.* (8th Cir

21  2009) 588 F. 3d 585, 595.

22     The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if

23  established, support a plausible claim for relief. No matter how improbably the facts alleged are, they

24  must be accepted as true for purposes of the motion. *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544,

25  556. A claim has plausibility when the plaintiff pleads the factual content that allows the court to

26  draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v Iqbal*

27

28  Case No. 5:14-CV-03765EJD

---

1    (2009) 556 U.S. 662,679.  Plausibility is to be considered in context, requiring a court to draw on its

2    judicial experience and common sense. *Ashcroft v Iqbal* (2009) 556 U.S. 662, 680.

3    **V.   ARGUMENT**

4        **A.   Plaintiffs Have Adequately Pled Imminent and Substantial Endangerment Under 42**
         **U.S.C. §6972(a)(1)(B).**

5

6            Plaintiff's RCRA §6972(a)(1)(b) allegations are unchanged from the allegations found to be

7    sufficient in the court's order denying Defendants' motion to dismiss the claim in Plaintiff's SAC.

8    In their Motion, Defendants rehash the same argument they raised in their prior motion to dismiss the

9    SAC. [Docket 92].   Here Defendants submit new evidence, an Interim Remedial Action Plan

10   ("IRAP") that formally requires the same Emergency Interim Measures as already required under the

11   Occupancy Plan alleged in Plaintiff's SAC. (IRAP at p. 13-14 & 16)

12           Specifically the Plaintiffs were required to provide an Occupancy Plan to address the ongoing

13   vapors that were permeating the building.  Plaintiffs submitted their Occupancy Plan to DEH.  It was

14   comprised of the Emergency Interim Measures to be employed until there was remediation of the

15   contaminated soil that caused the TCE-contaminated vapors.  In its SAC, Plaintiff alleged that these

16   Emergency Interim Measures in the Occupancy Plan were insufficient to address the imminent and

17   substantial endangerment caused by the ongoing toxic vapors.  SAC ¶¶27, 46. [Docket 78].  Plaintiffs

18   thereafter provided a formal interim plan (IRAP) to the DEH.

19           The IRAP provides for *exactly the same Emergency Interim Measures* as the Occupancy Plan

20   that is alleged in Plaintiff's SAC.   The court denied Defendants' motion to dismiss the RCRA claim

21   in Plaintiff's SAC.  Defendant's then, as now, characterized the Emergency Interim Measures as

22   remediation that obviated the endangerment caused by the continuing toxic soil vapors.   The court

23   denied their motion to dismiss the RCRA claim, finding:

24                   In accepting Plaintiff's factual allegations as true and construing the
                     alleged facts in the light most favorable to it, Plaintiff has adequately pled
25                   that the hazardous substance may present an imminent and substantial
                     endangerment.  The presence of SCCDEH, by itself, is not sufficient to
26                   diminish the nature of the threat that is present at the Property.
                     …..Accordingly, Plaintiff may proceed under §6972(a)(1)(B).
27

28   Case No. 5:14-CV-03765EJD

1     Defendants' motion as to Plaintiff's claim under §6972(a)(1)(B) is
2     DENIED.

3      These same Interim Emergency Measures (now embodied in both the Occupancy Plan *and*

4   the IRAP that is proffered by Defendants in their RFJN) are still alleged to be insufficient in

5   Plaintiff's TAC. TAC ¶¶27, 45.  The IRAP itself designates these Interim Emergency Measures as

6   "interim" and "*not a final remedial measure for the Site*."  IRAP at page 14.

7      The Resource Conservation and Recovery Act 42 U.S.C. §6901 et seq., (RCRA), is a

8   comprehensive environmental statute that regulates the treatment, storage, and disposal of solid and

9   hazardous wastes "from cradle to grave." *City of Chicago v. Environmental Defense Fund* (1994) 114

10  S. Ct. 1588, 1590. To prevail under § 6972(a)(1)(B), a plaintiff must prove:

11       (1) that the defendant is a person,[…]; (2) that the defendant has contributed to
12       or is contributing to the handling, storage, treatment, transportation, **or** disposal
         of solid or hazardous waste; and (3) that the solid or hazardous waste **may**
         present an **imminent and substantial endangerment to** health or the
13       environment. *Interfaith Community Organization v. Honeywell Intern., Inc*. (3rd
         Cir. 2005) 399 F.3d 248, 258 (*Honeywell*).(Emphasis added)
14

15      Defendants, in this Motion, solely address the adequacy of Plaintiff's pleading with regard to

16  whether the hazardous waste "may present an imminent and substantial endangerment to health or the

17  environment."  In that regard, Defendants argue that the Plaintiff's RCRA claims should be dismissed

18  despite Plaintiff's pleading that (1) the ongoing toxic condition of the soil continues to cause toxic

19  vapors to permeate the building and threatens the health and safety of the occupants at the Property

20  and (2) that the Emergency Interim Measures required by the DEH, pending remediation of the toxic

21  soil, are insufficient to remove the immediate and substantial danger from the ongoing toxic vapors.

22  Defendants base their Motion upon their conclusion that Plaintiff cannot "prove" substantial

23  endangerment. Motion, pg. 8:5-7.

24      The meaning of this RCRA language has been summarized as follows:

25      The operative word ... [is] "may"....

26       [P]laintiffs need only demonstrate that the waste ... "**may present**" an imminent
         and substantial threat.... Similarly, the term "endangerment" means a
27       **threatened or potential** harm, and **does not require proof of actual harm**....

28  Case No. 5:14-CV-03765EJD

The endangerment must also be "imminent" [meaning] threatens to occur immediately.... Because the operative word is "may," however, the plaintiffs must [only] show that there is a potential for an imminent threat of serious harm ... [as] an endangerment is substantial if it is "serious" ... to the environment or health. [citations omitted] *Honeywell, supra,* at 258

"endangerment is **substantial** if there is some reasonable cause for concern that someone or something may be exposed to a risk of harm ... if remedial action is not taken." (internal quotation omitted) *United States v. Union Corp.*, 259 F.Supp.2d 356, 399–400 (2003). …. given RCRA's language and purpose, Congress must have intended that *"if an error is to be made in applying the endangerment standard, the error must be made in favor of protecting public health, welfare and the environment." United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 194 (1985) *Honeywell, supra,* at 258 (Emphasis added)

Moreover, whether there is an imminent endangerment is a question of fact. *Honeywell* at 253 following *Parker v. Scrap Metal Processors, Inc.* (11th Cir. 2004) 386 F.3d 993, 1014–15 (reviewing jury's RCRA endangerment finding for sufficiency of the evidence); *Cox v. City of Dallas* (5th Cir. 2001) 256 F.3d 281, 300–01 (concluding district court "did not clearly err" in finding RCRA endangerment); *Dague v. City of Burlington* (2nd Cir. 1991) 935 F.2d 1343, 1355–56 (concluding district court's endangerment "finding" was not error), rev'd on other grounds, 505 U.S. 557 (1992)[1]. Thus, this factual question raised by Defendants is not appropriate for a motion to dismiss.

The cases relied on by Defendants are similarly inapplicable to the motion to dismiss. They are based upon extensive evidentiary showings by way of trial or summary adjudication motions. See *Price v. U.S. Navy* (9th Cir. 1994) 39 F.3d 1011, 1014 (nine day trial); *City of Fresno v. U.S.* (E.D. Cal. 2010) 709 F.Supp.2d 934,936-937 (summary adjudication); *West Coast Home Builders, Inc. v. Aventis Cropscience*, 2009 WL 2612380 at 1 (summary adjudication).   In *Price*, the verdict that the RCRA standard of imminent and substantial endangerment was not met was found only after trial at which the plaintiff failed to produce any evidence of *any* hazardous level of contamination. *Id* at 1019.  In *West Coast Home Builders, Inc.,* unlike here, remediation of the contamination at issue in

---

[1] *Honeywell* addressed the endangerment determination after a two-week bench trial. *Honeywell* at 253.

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                                                        10

1  the case had been in progress for many years.  In *City of Fresno* summary judgment was upheld

2  against the plaintiff who failed to present evidence of imminent and substantial endangerment in

3  opposition to Defendant's motion for summary judgment. *Id* at 937.

4      Other cases cited by Defendants are also inapposite.  In *Meghrig v KFC Western, Inc*., (1996)

5  516 U.S. 479, unlike here, the clean-up at the contaminated property had been completed before the

6  action was filed.  The question raised in *Meghrig* was whether a *completely remediated* site could

7  form the basis for a RCRA imminent endangerment claim. The court held that a site that had been

8  completely remediated at the time of filing suit could not support a RCRA claim.  Here the site is not

9  remediated at all.  Similarly in *Northern California River Watch v. Fluor Corporation,* 2014 WL

10 3385287 the defendant was *already* performing cleanup work under regulatory oversight.  The court

11 found there was nothing more it could do. *Fluor* at*9. Here the Defendants are doing nothing, despite

12 having been served with the appropriate RCRA notices. TAC ¶¶44, 49.

13     If a remediation is proposed and will remove all imminent and substantial danger, a plaintiff

14 may fail to plead a §6972(a)(1)(B) RCRA claim.  But if the proposed remediation is insufficient to

15 remove the imminent and substantial danger, the claim can survive a motion to dismiss.  *S.F. Herring*

16 *Ass'n. v. Pac. Gas & Elec. Co*. (N.D. Cal. 2015) 81 F. Supp. 3d 847.

17     Here the Property is not remediated at all.  There has been investigation and emergency

18 measures to prevent further exposure, but no cleanup/remediation has taken place.  The Defendants,

19 despite receiving their RCRA notice, have refused to perform a clean-up of the TCE-contaminated

20 soil that is causing toxic soil vapors to endanger occupants at the Property.  Plaintiff has sufficiently

21 alleged the imminent endangerment due to the continuing emanation of toxic vapors into the building,

22 requiring ongoing testing.  Plaintiff has sufficiently pled that the Emergency Interim Measures (doors

23 open and HVAC on at all times) to help mitigate the continuing permeation of the toxic gases is

24 insufficient to prevent imminent and substantial endangerment to health and environment.  And

25 Plaintiff's allegations specifically address the ongoing, unremediated, TCE-contaminated soil that is

26 the source of the toxic vapors that are continuing to invade the building. TAC ¶43.

27

28
Case No. 5:14-CV-03765EJD

1   The Band-Aid™ measure of leaving all of the bay doors open and blowing the HVAC system

2 100% of the time that the premises are occupied is not sufficient to remove the imminent and

3 substantial endangerment of the continuing toxic vapors at the Property.  It is merely an interim

4 measure pending remediation of the toxic soil at the Property.  Plaintiff has alleged that "unless the

5 releases are abated [they] will result in further and additional injury to …Plaintiffs and others."  TAC

6 ¶31.

7   At this pleading stage, Plaintiff has adequately alleged ongoing toxic vapors emanating from

8 the soil beneath the building at levels that are dangerous to health and safety of its occupants.

9   **B. Defendants' Proffered New Evidence is Objectionable and Does not Obviate the Imminent and Substantial Endangerment at the Property**.

10

11   Defendants have sought Judicial Notice of documents that set forth the Emergency Interim

12 Measures set forth in the IRAP to mitigate, to the extent possible, the effect of the continuing toxic

13 soil gasses on occupants of the Property.  Defendants seek to characterize these measures as a

14 "remediation" of the dangerous toxic vapors alleged in Plaintiff's TAC.

15   Defendants' Motion at page 8:28 – 9:1 states:

16   Critically, since Plaintiff's filing of the SAC and Defendant's Motion to
   Dismiss the SAC a plan for remediation has been proposed by Plaintiff

17   and approved by the DEH.

18   Plaintiff objects to Defendants' newly proffered "evidence."  See Section III above.  Contrary

19 to their characterization of the plan as "remediation" of the TCE-contaminated soil, the Emergency

20 Interim Measures, as documented in the IRAP, are *no different than the emergency interim plan as*

21 *alleged in Plaintiff's SAC*.  This is specifically explained in the IRAP at pages 13-14 & 16.  Ongoing

22 testing of the soil, vapors and groundwater is required *pending remediation of the toxic soils*.  All bay

23 doors at the premises must remain open at all times when anyone is present in the building.  The

24 HVAC must be operating at all times when anyone is present in the building.   No remediation of the

25 TCE-contaminated soil that is the cause of the toxic vapors is specified, approved or "overseen" by

26 the DEH.

27

28 Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC            12

1   Defendants' assert that Plaintiffs must amend to specifically address the new documents

2   submitted by way of their RFJN and that Plaintiff must again allege that the same DEH- required

3   Emergency Interim Measures (as alleged in the SAC) are insufficient to remove the imminent and

4   substantial daily endangerment to the environment and to the health of the individuals who occupy

5   the Property.  This is unsupportable, particularly in view of Defendants' objectionable RFJN.  As this

6   court has already ruled, Plaintiff's allegations in its TAC meet the elements of §6972(a)(1)(B).

7        If the court grants Defendants' RFJN, Plaintiff can and will adequately plead the inadequacy

8   of the same Emergency Interim Measures and the need for Defendants to commence the clean-up of

9   the source of the toxic vapors, the TCE-contaminated soil left behind from Defendants' operations at

10  the Property.  However, a process that allows defendants to file a factual motion based on each new

11  document submitted by the Paynes as they work on an ongoing contaminated site will result in a

12  twilight zone of never ending pleading motions and amended pleadings.  The pleading is adequate,

13  this Court has already refused to consider these types of objectionable documents and the Court

14  should firmly sustain Plaintiff's objection to the IRAP also.

15      **C.  Plaintiff Allegations Sufficiently Meet the Requirements of the Discovery Rule to Toll
         the Statute of Limitations.**

16

17  Defendants seek dismissal of Plaintiff's trespass, nuisance and negligence claims based upon

18  the assertion that Plaintiff has not sufficiently alleged facts that would toll the accrual of the statute of

19  limitations in this case to 2012, when Plaintiff discovered the Defendants' contamination of the

20  Property.

21      **1.      Plaintiff's Claims Fall Within The Statute of Limitations Under the
                  Discovery Rule.**

22

23  The discovery rule is meant to toll the statute of limitations until a plaintiff discovers the

    injury.

24

            The harshness of that rule [statute of limitations] has been ameliorated in
25          cases where it would be manifestly unjust to deprive a plaintiff of a cause
            of action before he is aware he has been injured.

26

27  Case No. 5:14-CV-03765EJD

28

1

> *Leaf v. City of San Mateo* (1980) 104 Cal. App. 3d 398, 406; *Mangini v. Aerojet-General Corp (1991) 230 Cal. App. 3d 1125, 1150.*

2

3       The court in *Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal. App. 3d 292, 297 stated that

4  the discovery rule is:

5

> [B]ased on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence.

6

7

8

9       *Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal. App. 3d 292, 297.

10      In order to rely on the discovery rule to delay the accrual of a statute of limitations, a plaintiff

11  must plead facts that show:

12

> …(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.

13

14      *Mangini v. Aerojet-General Corp (1991) 230 Cal. App. 3d 1125, 1150.*

15      In this case, Plaintiff has pled the exact date that it was advised by Apple of the contamination

16  at its Property.  Specifically, the TAC at ¶19 states that a potential tenant, Apple, engaged

17  environmental engineers to investigate the Property as a potential lease site for Apple.  Among the

18  due diligence testing conducted by Apple was a test of the indoor air.  This test disclosed the TCE-

19  contaminated vapors in the building at the Property.

20      Plaintiff has also alleged facts attendant to the reasonable diligence employed by Plaintff's

21  principal prior to his purchase of the Property including that the Property was investigated and

22  cleared by two environmental engineering companies that conducted the pre-purchase, Phase I and

23  Phase II investigations of the Property in 1991 and 1992.

24      Plaintiff meets the reasonable diligence standard required under the discovery rule.  Plaintiff

25  also alleges that after its principal purchased the Property (following clearance by environmental

26  engineers) he thereafter had no reason to suspect contamination at the Property, including the toxic

27  vapors that were emanating from the TCE-contaminated soil.  The contamination was below the

28  Case No. 5:14-CV-03765EJD

1   building, invisible to the eye and could not be smelled.  Plaintiff's allegations in its TAC are as

2   follows:

3        ¶12………*At the time of the purchase, James Payne was not aware* there were
4   Hazardous Substances above regulatory concern or actionable levels beneath the
    Property, nor was Plaintiff aware of the presence of Hazardous Substances above
    regulatory concern or actionable levels beneath the Property at the time the Property
5   was transferred from James Payne to Verse.

6        ¶16. Prior to the purchase in 1992 James Payne *undertook "all appropriate inquiry,"*
7   within the standard of care applicable to real property and CERCLA in 1992, to
    evaluate the environmental condition of the Property. In 1989 Defendant Hanggi
8   Manufacturing presented a Phase I by a geotechnical and water resources engineering
    firm to Mr. Payne as part of Mr. Payne's all appropriate inquiry to determine the
9   environmental condition of the Property. In 1991 James Payne had a Phase II
    environmental investigation performed at the Property by another environmental
10  engineering firm. The environmental investigations undertaken in 1989 and 1991 did
    not detect contamination at levels of concern, nor at actionable levels, *nor any*
11  *contamination believed to be related to a release at the Property*. Therefore the
    purchase by James Payne of the Property went forward. *No soil contamination on the*
12  *Property, nor detection of contamination in soil vapor at the Property, nor any*
13  *contamination believed to have originated from the Property's past operations, was*
    *discovered via either of these environmental investigations*. As a transfer between
14  James Payne and his wholly owned company there was no legal requirement for a
    further all appropriate inquiry of the Property at the time of the transfer between James
15  Payne and Verse in 2011.

16       ¶17.  Verse more recently discovered the presence of Hazardous Substances in the soil,
17  soil gas, indoor air and groundwater beneath the Property related to a release at the
    Property. The exact nature and extent of the contamination of the Property is still
18  unknown to Plaintiff.

19       ¶18.  Verse was *unable to make an earlier discovery* of the contamination despite
20  reasonable diligence. First, the *contamination at issue is beneath the building and*
    *pavement and is invisible to the eye and the toxic indoor air vapors could not be*
21  *smelled.* Second, Plaintiff had *no reason to suspect the Property was contaminated*
    *from the prior Property operations because Mr. Payne had relied on and conducted a*
22  *diligent all appropriate inquiry investigation, including a Phase I and Phase II*
    *investigation, using reputable environmental engineering companies prior to purchase.*
23  *The Property passed those inspections*. Third, Plaintiff had not received any further
    information in the years after its purchase of the Property to indicate that there might
24  be undetected contamination beneath the Property associated with the prior Property
    operations. …
25
26       ¶19.  Plaintiff learned of the contamination at the Property affiliated with the prior
    Property operations by Defendants at levels requiring remediation and protection from
27  exposure, only when a potential tenant, Apple Inc., *engaged a different environmental*

28  Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI
MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT
15

10468311.DOC

1

> *engineering company that used different investigation techniques than had been used*
> *in the prior investigations over 20 years earlier. ..*

2

3

> ¶24.  No releases or disposal of Hazardous Substances on the Property have occurred
> during Verse's ownership of the Property.  [Emphasis added].

4

After learning from Apple on April 6, 2012, of the toxic conditions at the Property, Plaintiff hired

5

its own environmental engineering company, Arcadis U.S., Inc., and commenced further investigation

6

into the contamination found at the Property. Only after conducting further investigation did Plaintiff

7

begin to understand the nature and extent of the harm and its association with the prior operations at the

8

Property by Defendants.  TAC ¶19.

9

Despite Plaintiff's allegations about due diligence prior to the purchase of the Property and his

10

lack of any suspicion or notice of a problem at the Property until Apple investigated it in 2012,

11

Defendants assert that Plaintiff has not pled sufficient facts to show that it did not and could not

12

reasonably have discovered the contamination prior to Apple's independent investigation of the

13

Property.  Defendants cite *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.* (9th Cir. 2013) 710

14

F.3d 946 in support of its argument.  But *Chubb* simply held that a statute of limitations accrues

15

"when the plaintiff knows, or should have known, of the wrongful conduct at issue.  *Chubb, supra*, at

16

973.

17

Defendants also cite *Mangini v. Aerojet-General Corp (1991) 230 Cal. App. 3d 1125* in

18

support of their assertion that Plaintiff has not met the pleading standards to fall within the discovery

19

rule.  In *Mangini*, more than three years prior to filing its action against the prior owner of its

20

property, plaintiff had been visited by the U.S. Department of Justice ("DOJ") which was conducting

21

"an investigation of [defendant's] hazardous waste disposal practices."  Additionally, thereafter, and

22

also more than three years prior to the action, the defendant had sought permission to inspect and

23

conduct tests at the property.  The court found that the constellation of facts pled by the plaintiff,

24

including the DOJ investigation and defendants testing, which might not have been sufficient, "in

25

isolation" to impart notice to the defendant, together demonstrated that "when defendant contacted

26

27

Case No. 5:14-CV-03765EJD

28

1  plaintiffs in 1984, plaintiffs had sufficient information to put them on notice of the possibility that

2  defendant had dumped hazardous waste on the property." *Mangini, supra*, at 844-845.

3      Similarly, Defendants' reliance on *Camsi IV v Hunter Tech. Corp.* (1991) 230 Cal App 3d

4  1525 is inapplicable here.   In *CAMSI IV*, unlike here, the plaintiff did not plead that he had

5  conducted a "due diligence" investigation prior to purchasing the property.  More importantly,

6  however, the court noted plaintiff's own pleading (admission) of notice of contamination.  In ruling

7  that plaintiff could not rely on the discovery rule the court found that more than three years prior to

8  filing its complaint, the plaintiff had notice that the San Francisco Regional Water Quality Control

9  Board had:

10          mandated investigation of the groundwater and soil of the Subject
           Property, partly because of TCE…and other VOC's had been found

11          thereon and thereunder.
           *Id.* at 1537

12

13      That is not the case here where Plaintiff's principal did exercise reasonable diligence prior to

14  purchasing the Property. The pre-purchase Phase I and Phase II environmental investigations cleared

15  the Property.  After purchase, he did not have any reason to suspect or know of the contamination that

16  was invisible, and could not be smelled.  Unlike *Camsi IV* and *Mangini* there was no DOJ

17  investigation or Regional Board investigation to put Plaintiff on inquiry notice.  Instead the site was

18  totally quiet.  Upon learning of the contamination, Plaintiff promptly acted reasonably and

19  responsibly by retaining environmental engineers to conduct further investigation and reporting to the

20  DEH.  Plaintiff has met the "reasonable diligence" standard under the discovery rule.

21          **2.**      **Defendants' Unfounded Claims of Constructive Notice Are Contrary to
                      the Third Amended Complaint and, at Best, Present Issues of Fact.**

22

23      Defendants assert that Plaintiff's inability to see or smell the contamination "does not explain

24  why Plaintiff could not have reasonably discovered the contamination through appropriate testing."

25  Motion: pg. 11:19-20. Defendants, with no basis, claim that Plaintiff "must have" had constructive

26  knowledge of the contamination at the Property.  Motion pg. 12: 10-17.

27  Case No. 5:14-CV-03765EJD

28

First, Plaintiff did not have constructive or presumptive knowledge and there is not language in the TAC that implies such knowledge.  Second, it is unclear what Defendants mean by "appropriate testing."   It appears that Defendants assert, without authority, that Plaintiff should be required to plead an exhaustive explanation as to why it did not engage in ongoing, post-purchase, additional environmental investigations after the Property had been cleared in the pre-purchase Phase I and II investigations and where Plaintiff had no reason thereafter to suspect the invisible contamination.  No case supports such an absurd proposition.

A plaintiff is only charged with "presumptive knowledge" so as to commence the running of the statute of limitations once he or she has notice or information of circumstances to put a reasonable person on inquiry.  "Subjective suspicion is not enough."  *Sanchez v. South Hoover Hospital* (1976) 18 Cal. 3d 93, 101;  *Wilshire Westwood v Atl Richfield Co*. (1993) 20 Cal App 4th 732.

More importantly, the cases finding constructive notice require *evidence* to make such a determination.  Constructive notice is a finding of fact and cannot be decided at the pleading stage. *Wilshire, supra* at 744 [Summary judgment motion was granted based on *undisputed facts]*; see also, *Mangini v Aerojet-General Corp*. (1991) 230 Cal App 3d 1125 (1991).

Defendants' unfounded conclusion that Plaintiff had "constructive" knowledge is contrary to the allegation in the TAC which states:

> Therefore the purchase by James Payne of the Property went forward. *No soil contamination on the Property, nor detection of contamination in soil vapor at the Property, nor any contamination believed to have originated from the Property's past operations, was discovered via either of these environmental investigations*. TAC ¶16

Defendants' rely on *Wilshire Westwood Associates v. Atlantic Richfield Co* (1993) 20 Cal App. 4th 732 to support their conclusion of "constructive" knowledge.  In *Wilshire*, the defendant sought summary judgment on statute of limitations grounds.  The defendant asserted that the plaintiffs had knowledge or "presumptive knowledge" of the contamination at their property when they purchased it, more than three years prior to their lawsuit.  The *Wilshire* court found, based upon *undisputed facts* set forth in the defendant's motion for summary judgment, that a reasonable

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                    18

1   investigation by the plaintiff's soils engineer would have revealed the contamination. *Wilshire,*

2   *supra,* at 741.

3        Particularly relevant here, the *Wilshire* court, citing *Leaves v. City of San Mateo* (1989)104

4   Cal. App. 3d 398, distinguished the demurrer [motion to dismiss] stage of a pleading from that of a

5   trial or motion for summary judgment.

6             For purposes of overcoming a demurrer on statute of limitations grounds,
          the court observed that "where as in this case, plaintiffs consulted with

7             professional engineers as to the source of their injury, they were entitled to
          rely upon that advice." (*Ibid*) the court further noted however, that

8             'Whether plaintiffs *in fact* exercised reasonable diligence in discovering
          the negligence of defendant City of San Mateo is a question of fact…"  Id

9             at p. 409, italics added.

10            *Wilshire, supra*, at 744.

11

12       Plaintiff here has sufficiently pled due diligence prior to the purchase of the Property and that

13  there was no reason thereafter to suspect or believe that contamination existed until it was discovered

14  by Apple's investigations.  Defendants bald conclusion that Plaintiff had "constructive" or

15  presumptive notice of contamination is entirely contrary to Plaintiff's well-pled factual allegations in

16  its TAC which must be accepted as true and construed in the light most favorable to plaintiff. *Love v.*

17  *United States* (9th Cir. 1988) 915 F.2d 1242, 1245.

18       Defendants' argument, that a new and rigorous post-purchase environmental testing protocol

19  should be imposed on a property owner in order to sufficiently allege the discovery rule, is

20  unprecedented, without authority and should be rejected.  Notably, since Plaintiff's principals, Mr.

21  and Ms. Payne, worked in the building for over 20 years, had they known that the TCE-contaminated

22  soils were causing toxic vapors to permeate their own workspaces, and the workspace of their

23  employees and tenants, they would have addressed it.

24        Plaintiff has sufficiently pled its claims of nuisance, trespass, negligence and negligence per

25  se.  Plaintiff has sufficiently pled facts that toll the accrual of the statute of limitations for these

26  claims.   Defendants' motion to dismiss Plaintiff's fourth, fifth, sixth and seventh claims for trespass,

27  nuisance and negligence should be denied.

Case No. 5:14-CV-03765EJD

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                                                                                   19

1    Should the court find that Plaintiff has not sufficiently alleged facts as to its discovery of the

2    contamination and why it was unable to reasonably have discovered the contamination prior to

3    Apple's environmental investigations, the Plaintiff seeks leave to amend to augment its pleading.

### D.  Plaintiff is Allowed to Elect Between Continuing and Permanent Trespass and Nuisance.

6    Based on the date of discovery and the application of the discovery rule Plaintiffs may have

7    claims for either permanent or continuing trespass or nuisance. Plaintiff is entitled to elect between

8    the two claims and that election may occur up to the date of trial.  It is not required to elect at the

9    inception of the case. As Witkin explains:

> The plaintiff's election [to choose a continuing or permanent tort] was strongly affirmed in *United States v. Dickinson* (1947) 331 U.S. 745, where the government's dam flooded plaintiff's land, and it was contended that the statute began to run at once because suit could have been brought at that time. "Assuming that such an action would be sustained, it is not a good enough reason why he must sue then or have, from that moment, the statute of limitations run against him. If suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain. The source of the entire claim—the overflow due to rises in the level of the river—is not a single event; it is continuous. And as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized." (67 S.Ct. 1385, 91 L.Ed. 1794.)
>
> 3 Witkin, Cal. Proc. 5th (2008) Actions, § 601, p. 779; *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56 [election is not made until trial.]

21    None of the authorities cited by Defendants support their implied assertion that Plaintiff

22    should be precluded from alleging continuing trespass and nuisance claims as an alternative to

23    permanent trespass and nuisance claims.  Indeed, FRCP Rule 8(d)(2) explicitly permits alternative

24    pleading.

25    Defendants rely upon *Whittlestone Inc., v. Handi-Craft Co* (2010) 618 F. 3d 970 to support

26    their assertion that the court must dismiss Plaintiff's alternative continuing nuisance and trespass

27    claims.  But notably, Defendants misstate the holding of *Whittlestone Inc., v. Handi-Craft Co* (2010)

28    Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                                                                          20

1   618 F. 3d 970, as authority for their argument.  Defendants state that in the *Whittlestone* case the

2   court granted "defendants' motion to dismiss plaintiff's continuing trespass and continuing nuisance

3   claims where plaintiff sought diminution of value damages."  Motion: pg. 13:16-18. This is

4   inaccurate.

5         First, the *Whittlestone* case is not a trespass case at all.  It concerns a commercial contract with

6   a disputed provision that precluded claims for lost profits and consequential damages.  It did not

7   address alternative legal theories such as continuing or permanent trespass which have alternative

8   remedies.  In *Whittlestone,* the court held:

9               We hold that rule 12(f) of the Federal Rules of Civil Procedure does not
10              authorize a district court to dismiss a claim for damages on the basis it is
                precluded as a matter of law.  Therefore we remand this case back to the
11              district court with specific instructions to not dismiss Whittlestone's claim
                for lost profits and consequential damages under Rule 12(f) motion.

12              *Whittlestone*, *supra* at 975-976.

13         Second, whether or not lost profits was a proper component of damages was a question of

14   fact.  The *Whittlestone* court went on to explain that, even using the 12(b)(6) standard to dismiss the

15   damages claim "as a matter of law" was error since the construction of the contract and intent of the

16   parties was a question of fact.  *Whittlestone*, supra at 976, ftn. 2.

17         The alternative continuing and permanent trespass and nuisance claims raise factual questions

18   and, once established, will determine which statute of limitations and which species of damages will

19   apply.

20         Because Plaintiff is entitled to elect whether the trespass and nuisance claims are continuing

21   or permanent, Defendants' demand that the court strike Plaintiff's alternative damage requests

22   (diminution of value for claims of permanent nuisance and trespass or past damages for continuing

23   nuisance and trespass claims) must be rejected.

24

25

26

27   Case No. 5:14-CV-03765EJD

28

1

2   **VI.   CONCLUSION**

3          For the foregoing reasons Defendant's motion to dismiss must be overruled, or if the motion

4   is granted Plaintiff requests leave to amend.

5   Dated:  January 18, 2016                          SILICON VALLEY LAW GROUP

6

7
                                           By: /s/ Jeffrey S. Lawson
8                                               Jeffrey S. Lawson
                                                Attorneys for Verse Two Properties, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:14-CV-03765EJD

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS HANGGI MANUFACTURING, INC.'S AND MEDPLAST FREMONT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

10468311.DOC                                                22